UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **ElectraLED, Inc.,**<br><br>Plaintiff,<br><br>v.<br><br>**Astera LED Technology GmbH, Astera Manufacturing Limited and Astera Distribution Limited,**<br><br>Defendants. | Case No. 2:25-cv-583<br><br>**JURY TRIAL DEMANDED** |

### ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

ElectraLED, Inc. ('ElectraLED" or "Plaintiff") hereby files this Original Complaint for Patent Infringement against Astera LED Technology GmbH ("Astera Germany"), Astera Manufacturing Limited ("Astera China") and Astera Distribution Limited ("Astera Hong Kong" and collectively, "Astera" or "Astera Defendants"), and alleges, upon information and belief, as follows:

### THE PARTIES

1.  ElectraLED is a corporation organized and existing under the laws of the State of Florida with its principal place of business at 10990 49th St. North, Clearwater, Florida 33762.

2.  Upon information and belief, Defendant Astera LED Technology GmbH is a German corporation with its headquarters at Schatzbogen 60, 81829 Munich, Germany. Astera LED Technology GmbH is a leading manufacturer and seller of LED lighting technologies in the world and in the United States. Upon information and belief, Astera LED Technology GmbH does business in Texas, directly or through intermediaries, and offers its products and/or services, including those

accused herein of infringement, to customers and potential customers located in Texas, including in the Judicial District of the Eastern District of Texas. Astera Germany may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because it engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute.  This action arises out of that business.

3. Astera LED Technology GmbH, acting in concert with its subsidiaries and affiliates, manufactures and sells LED lighting technologies worldwide, including throughout the United States and within Texas. Since the mid-2000s, Astera has been producing battery-powered, remote controlled LED lights. The Astera group of companies—collectively known as "Astera"—have a global reach and have a strong presence in the United States. Astera employs more than 300 people spread over 3 offices worldwide,[1] with some in the United States.[2]

4. Astera LED Technology GmbH owns or controls, directly or indirectly, each of the Astera entities with which it coordinates the infringing sale, offer for sale, import, use, and manufacture of Accused Products in the United States, including the other products.  Astera LED Technology GmbH operates and manages a global supply chain to develop, manufacture, and deliver accused LED lighting technology products to the United States, including Texas.  At the direction or control of Astera LED Technology GmbH, Accused Products are packaged, shipped, and sold to customers in the United States.  Astera LED Technology GmbH reports U.S. sales of the Accused Products as its own.  Astera LED Technology GmbH advertises that it manufactures most of its products in its own facilities, rather than through third parties.  For example, on its website, Astera

---

[1] https://astera-led.com/about/
[2] *See* https://www.linkedin.com/company/asteraofficial/people/?facetGeoRegion=103644278, LinedIn profile with U.S. presence of people.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                          2

        LED Technology GmbH states: "To keep up with growing demand, Astera moves into a 10,000 sqm factory in Shenzhen, nearly doubling its size of production space,"[3] and through Astera Hong Kong, "[w]e've partnered with 50 distributors worldwide, ensuring our products are readily available wherever you are."[4]

5.     Defendant Astera Manufacturing Limited is a company organized under the laws of the People's Republic of China. Astera China has an office at Building 3, CLT Technology Park, No. 7, Ganli 6th Road, Longgang District, Shenzhen, China, and may be served with process pursuant to the provisions of the Hague Convention. Astera China may be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because it engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute. This action arises out of that business.

6.     Astera China, an indirect subsidiary of Astera Germany, has been and is involved in the manufacturing and distribution of accused LED lighting products. Astera China has been and is involved in the manufacture of Accused Products that are eventually sold to Astera Hong Kong or other companies, who then sell the Accused Products to U.S. distributors. Astera China knows that the Accused Products it manufactures are intended for the United States market. Astera China has been and is involved in the shipping of Accused Products, such as LED lighting technologies, to the United States—both directly and through intermediate Astera entities. Astera China has been and is involved in shipping at least some of the Accused Products to the United States under the direction or control of Astera Hong Kong. Astera China's role within the Astera companies includes applying for the necessary licenses and authorizations for accused computer products in the United States, including with the FCC, and obtaining the necessary UL certifications.

---

[3] *See* https://astera-led.com/about/
[4] *Id.*

7. Astera Hong Kong is a company organized under the laws of Hong Kong SAR. Astera Hong Kong has an office at Room 1120, Landmark North, 39 Lung Sum Avenue, Sheung Shui, N.T., Hong Kong, and may be served pursuant to the provisions of the Hague Convention. Astera Hong Kong may also be served with process by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as its agent for service because it engages in business in Texas but has not designated or maintained a resident agent for service of process in Texas as required by statute. This action arises out of that business.

8. Astera Hong Kong, an indirect subsidiary of Astera Germany, is involved in the procurement, marketing, distribution, and sale of accused LED lighting products. In particular, at the direction and control of Astera Germany, Astera Hong Kong procures, makes, sells, offers for sale, imports, and uses Accused Products manufactured for the United States by Astera distributors. That role includes providing manufacturers with designs and specifications of accused LED lighting products destined for the United States.

9. Further, Astera Hong Kong has been and is involved in the shipping of Accused Products, such as LED lighting technologies, to the United States—both directly and through intermediate Astera distributors. Astera Hong Kong also has sold and sells accused Astera products, such as LED lighting technologies, to at least one U.S. distributor— Inner Circle Distribution —who then re-sells them to Astera customers residing in the United States.[5] Astera Hong Kong does the above activities at the instruction and under the supervision of Astera Germany. Astera Defendants are aware that the Accused Products sold in the United States, such as to Inner Circle Distribution, are distributed throughout the United States, including in Texas.

---

[5] https://astera-led.com/dealer/

10. The named Astera Defendants companies that together—with their affiliates—comprise one of the world's leading manufacturers of LED lighting products. Together, the Astera Defendants design, manufacture, use, import into the United States, sell, and/or offer for sale in the United States LED lighting products. Astera's products are marketed, offered for sale, and/or sold throughout the United States, including within this District.

11. The Astera Defendants named above and their affiliates are part of the same corporate structure and distribution chain for the making, importing, offering to sell, selling, and using of the accused devices in the United States, including in the State of Texas generally, and this Judicial District in particular. Defendants engage in coordinated and concerted action to direct the Accused Products throughout the United States, including Texas.

12. The Astera Defendants named above and their affiliates share the same management, common ownership, advertising platforms, facilities, distribution chains and platforms, and Accused Product lines and products involving related technologies.

13. In the promotional materials, manuals, guides, terms of use, sales agreements, warranties, or similar documentation related to the Accused Products, the Astera Defendants regularly omit which specific Astera company or entity is responsible for the documents or associated products, or instead identify "Astera." As a result, customers of the Accused Products understand that Astera Germany Astera as a whole, makes and sells the Accused Products.

14. Astera Germany, and Astera as a whole, holds itself out as the entity that manufactures, sells, offers to sell, imports, and uses the Accused Products in the United States, including Texas. For example, the privacy statement of www.astera.com states that "[t]he responsible party is … Astera LED Technology GmbH."[6]

---

[6] https://astera-led.com/privacy/

15. The Astera Defendants named above and their affiliates operate as a unitary business venture and are both jointly and severally liable for the acts of patent infringement alleged herein.

16. On information and belief, Defendants directly and/or indirectly develop, design, manufacture, distribute, market, offer for sale, and/or sell infringing products and services in the United States, including in the Eastern District of Texas, and otherwise directs infringing activities to this District in connection with their products and services.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338(a).

18. This Court has personal jurisdiction over Defendants under the laws of the State of Texas, due at least to their conducting substantial business in Texas and purposeful availment of conducting such business in the State of Texas, including within this judicial district, directly or through intermediaries, including: (i) at least a portion of the infringing conduct alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in the State of Texas.

19. Astera, directly and/or through subsidiaries or intermediaries, has committed and continues to commit acts of infringement in this District by, among other things, making, using, importing, offering to sell, and/or selling products that infringe the Patents-in-Sui.

20. Astera induces its subsidiaries, affiliates, retail partners, and customers to make, use, sell, offer for sale, and/or import throughout the United States, including within this Judicial District, infringing products and placing such products into the stream of commerce via established distribution channels, knowing or understanding that such products would be sold and used in the United States, including in the Eastern District of Texas. The previous Paragraphs are incorporated by reference as if fully set forth herein. Astera purposefully directs the infringing products identified

20.     herein into established distribution channels within this District and the U.S. nationally. For example, Astera has authorized sellers and sales representatives that offer for sale and sell the infringing products throughout the State of Texas and to consumers throughout this District, including Time Matters Entertainment, of Plano, Texas.[7]

21.     This Court also has personal jurisdiction over Defendants based on their introduction and delivery of infringing products and services into the stream of commerce with the expectation that such infringing products would be sold and/or used in this judicial district. *See In re Toyota Hybrid Brake Litig.*, 2021 U.S. District LEXIS 124918 (E.D. Tex. Jul. 6, 2021). Nor would the court's exercise of personal jurisdiction over Defendants violate traditional notions of fair play and substantial justice.

22.     Defendants are subject to this Court's jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to its substantial business in this State and Judicial District, including (a) at least part of its past infringing activities, (b) regularly doing or soliciting business in Texas, and/or (c) engaging in persistent conduct and/or deriving substantial revenue from goods and services provided to customers in Texas.

23.     Astera maintains regular and established places of business in this Judicial District, the State of Texas, and elsewhere in the United States, as discussed more below, with "Rental" locations in this Judicial District, the State of Texas, and elsewhere in the United States.

24.     As discussed, Astera transacts substantial business with entities and individuals in the State of Texas and this District, by among other things, willfully delivering into the stream of commerce for use the infringing methods and systems throughout the State of Texas and this District. Defendants have authorized sellers, sales representatives and customer service agents ("Astera

---

[7] https://astera-led.com/dealer/

Agents") that offer, sell and service products pertinent to this Complaint through the State of Texas, including in this Judicial District, and to consumers throughout this Judicial District, such as interested customers to where they can buy or use the products in the United States, including Time Matters Entertainment, of Plano, Texas.[8]





See https://www.timemattersentertainment.com/contact-us (showing dealer in Plano, Texas)

---

[8] *See* https://www.timemattersentertainment.com/contact-us (providing location of Time Matters Entertainment in Plano, Texas).

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                                 8

25. The Astera Agents have fixed geographical locations. They are "regular" and "established" because they operate in a "steady, uniform, orderly, and methodical manner" and are sufficiently permanent. These locations are "of the defendant" because Astera has contractual rights with the Astera Agents in the United States. As explained, Astera also ratifies these facilities through its advertising of them through its website.

26. Astera has a defined places and sets out the physical specifications for its exclusive and separate areas within the Astera Agents' locations. Astera also explicitly retains control over the exclusiveness of the defined places and separate areas as well as their locations, resulting in physical locations for Astera within this District.

27. Astera also has regular, physical presences of Astera employees in this District conducting Astera's business. Astera maintains a regular and established place of business at the Astera defined places and separate areas at the Astera Agents' locations by the regular, physical presence of its employees.

28. The Astera Agents are Astera's agents for the purpose of conducting Astera's business in this District because Astera provides regular instructions directing the Astera Agents' performance of the repairing, refurbishing, warehousing, and packaging services that Astera offers to its customers.

29. Astera retains complete, absolute, and exclusive control over the its exclusive and separate areas within the Astera Agents' locations.

30. Astera ratifies its exclusive and separate areas within the Astera Agents' locations because it exercises interim control over the Astera Agents' activities and holds out to the public that Astera's services are being performed at the Astera Agents' locations in this District. Within the exclusive and separate areas within the Astera Agents' locations, Astera has absolute control over their

conduct. Astera does not merely use the exclusive and separate areas within the Astera Agents' locations within this District, but controls all aspects of their conduct as it pertains to Astera's exclusive and restrictive exclusive Astera areas.

31. As shown above, venue is proper in this District pursuant to 28 U.S.C. § 1400(b) because Defendant has regular and established physical places of business in this District and have committed acts of patent infringement in the District.

32. Venue is also proper in the Eastern District of Texas as to Defendant pursuant to at least 28 U.S.C. §§ 1391(b) and (c) and 1400(b), as well as under the "alien venue rule." *Brunette Machine Works, Ltd. v. Kockum Indus., Inc.,* 406 U.S. 706 (1972); *In re HTC Corp.,* 889 F.3d 1349 (Fed. Cir. 2018); Weatherford *Tech. v. Tesco Corp.,* 2018 WL 5315206 at *2-3 (E.D. Tex. Oct. 26, 2018). As noted above, Defendant is a foreign entity which maintains a regular and established business presence in the United States.

## BACKGROUND AND PATENTS-IN-SUIT

33. ElectraLED produces high-quality, energy-efficient, commercial LED lighting products. With a broad and continually developing product offering, ElectraLED provides an array of solutions focused on commercial LED lighting needs. ElectraLED is proud to be made in the U.S.A., and ElectraLED's mission is to provide the most economical, expertly engineered and rigorously tested LED illumination products with unparalleled service and support to customers worldwide.

34. ElectraLED takes pride in the continuous development of new and innovative products to meet the efficiency demands of the future. All ElectraLED lighting systems are designed in-house and every product is subjected to third party certification testing for safety, longevity and performance.

35. In developing one of those new and innovative products, ElectraLED's engineers conceived U.S. Patent No. 9,618,187 ("the '187 Patent or the "Patents-in-Suit"), relating to durable light fixtures with improved thermal management properties to ensure reliable operation.

36. ElectraLED is the sole and exclusive owner, by assignment, of the Patents-in-Suit. Thus, ElectraLED has sole and exclusive standing to assert the Patents-in-Suit and to bring these causes of action.

37. The Patents-in-Suit are valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

38. The Patents-in-Suit includes numerous claims defining distinct inventions. As discussed below, the inventions generally relate to durable light fixtures with improved thermal management properties to ensure reliable operation. More specifically, by way of example, the '187 Patent contemplates a light engine featuring an arrangement of light emitting diodes (LEDs), a rugged high thermal performance housing featuring improved thermal performance through the use of an air flow passageway, and an external power supply removably embedded within an optional external enclosure.

39. The priority date of each of the '187 Patent is at least as early as June 13, 2007. As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

40. By way of example, before the inventions of the '187 Patent, light fixtures suitable for commercial use, such as in or around building and commercial facilities, were typically designed to be durable since they can be struck or damaged during business operations. To provide this durability, prior art light fixtures typically had substantial housings that protected the light source. Most prior art commercial light fixtures utilized fluorescent bulbs, halogen bulbs, mercury vapor lamps, or metal halide lamps as the light source. However, prior art commercial fixtures suffered from a variety of

      limitations, including but not limited to, high cost, low efficiency, high power consumption and/or poor light output quality. Thus, the overall appeal of prior art commercial fixtures was limited, and will further erode as energy costs (and the related operating costs) continue to increase. *See* '187 Patent, Col. 1, ll. 39-55.

41. The inventors of the '187 Patent conceived new light fixtures to solve these limitations and to provide advantages and aspects not provided by conventional light fixtures. This is achieved by having a light fixture that includes an LED light engine, which by design, is energy efficient and provides high quality light output. The inventive light fixture includes a rugged housing and an internal power supply that is thermally isolated while residing within the housing. Positioning the power supply within the housing minimizes the opportunity for incurring damage to the power supply. This is of particular importance when the light fixture is configured for use in high-traffic commercial or industrial applications, such as warehouses, loading docks or shipping/receiving areas, where the light fixture is prone to be stricken by forklifts and other large objects. While an internal power supply enjoys a reduced chance of being damaged, the power supply is susceptible to failure from heat generated by the light engine. The light fixture includes several novel heat management features designed to thermally isolate the power supply in order to reduce the risk of failure and thereby increase the reliability of the light fixture. *See* '187 Patent, Col. 1, ll. 66-67 and Col. 2, ll 1-15.

42. Another important aspect of the invention, to increase its performance and durability, and minimize issues arising from heat generated by a light engine, '187 Patent discloses a light fixture which includes a lens cover, as part of the heat management components of the housing, used to cover and protect the LEDs and the light engine. In different embodiments, the lens cover can be made of polycarbonate, acrylic or other suitable transparent or translucent material which is cut

from flat extruded sheet stock or be injection molded. The lens cover can be water clear or diffused to help reduce glare. It may also act as both an optical lens and a protective cover functioning as a light pipe to collimate the light at a desired point. *See* '187 Patent, Col. 5, ll. 26-29 and, Col. 7, ll. 7-16.

43. The '187 Patent is a pioneering patent, and has been cited as relevant prior art in 203 subsequent United States Patent Applications, including Applications Assigned to such technology leaders as Toshiba Lighting, Cooper Technologies, Ingersoll-Rand, LG, Eaton Intelligent Power, LG, and Cree, Inc.

44. The claims of the Patents-in-Suit were all properly issued, and are valid and enforceable.

45. The expiration date of the '187 Patent is no earlier than June 13, 2027.

## ASTERA'S INFRINGING PRODUCTS

46. Upon information and belief, Astera makes, sells, advertises, offers for sale, uses, or otherwise provides light fixtures that utilize the Patents-in-Suit's patented durable light fixture with improved thermal management properties to ensure reliable operation. Chauvet has manufactured and sold products that infringe the Patents-in-Suit, and which include at least, but not limited to, the following:

- AX9 Power Par
- AX5 Triple Par
- Ax7 Spotlite
- AX10 SpotMax
- QuikSpot

47. Collectively, the above listed products, among other light fixtures, including all augmentations to these fixtures, all the foregoing is referred to herein as the "Accused Instrumentalities."

48. As shown below, and with more detail in Exhibit A attached hereto, the Accused instrumentalities include each and every limitation of at least, but not limited to, claim 1 of the '187 Patent, and

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                    13

therefore literally infringe these claims. Plaintiff reserves the right to assert additional claims and to assert infringement under the doctrine of equivalents in light of information learned during discovery or in view of this Court's claim construction order.



## COUNT I
### Infringement of U.S. Patent No. 9,618,187

49. Plaintiff incorporates the above paragraphs by reference.

50. Defendant without authority, continues to make, use, sell, offer to sell, and/or import into the United States its Accused Instrumentalities as shown above.

51. Defendant thus has infringed and continues to infringe at least claim 1 of the '187 Patent literally and/or under the doctrine of equivalents.

52. Further on information and belief, Defendant directly uses the infringing Accused Instrumentalities at least because it assembled the combined infringing elements and makes them collectively available in the United States, including via resellers, distributors and its Internet domain web pages.  Further, and on information and belief, Defendant has directly infringed by using the infringing Accused Instrumentalities as part of its ongoing and regular testing and/or

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                      14

internal legal compliance activities. Such testing and/or legal compliance necessarily requires Defendant to make and use the Accused Instrumentalities in an infringing manner. Still further, Defendant is a direct infringer by virtue of its branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Instrumentalities.

53. Defendant has also actively induced and will continue to actively induce the infringement of at least one of claim 1 of the '187 Patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively and knowingly aiding and abetting infringement of others through activities such as creating and/or distributing tutorials, brochures, manuals, instructional documents, and/or similar materials with instructions on creating, manufacturing, designing, assembling and/or implementing infringing products, with the specific intent to induce others to directly make, use, offer for sale, sell, and/or import into the United States products that fall within the scope of the '187 Patent, without license or authority from Plaintiff. On information and belief, Defendant knows that the induced acts constitute infringement of the '187 Patent.

54. Defendant individually, collectively, or through others or intermediaries, have contributorily infringed, and/or is contributorily infringing, in violation of 35 U.S.C. § 271(c), at least one claim of the '187 Patent by making, using, offering for sale, selling, and/or importing, material parts of the inventions claimed in the '187 Patent, which are not a staple article or commodity of commerce suitable for substantial non-infringing use, and knowing the accused parts to be especially made or especially adapted for use in an infringement of the '187 claims.

55. Defendant has been on actual notice of the '187 Patent at least as early as the date of the Original Complaint. Defendant's direct and indirect infringement of the '187 Patent have thus been committed with knowledge of the '187 Patent, making Plaintiff liable for direct, indirect, and willful infringement.

56. Defendant's infringement of the '187 Patent will continue to damage Plaintiff, causing irreparable harm for which there is no adequate remedy at law, unless it is enjoined by this Court.

57. Plaintiff has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

58. Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court enter judgment against Defendant as follows:

1. Declaring that Defendant has infringed the Patents-in-Suit;

2. Awarding Plaintiff its damages suffered because of Defendant's infringement of the Patents-in-Suit;

3. Awarding Plaintiff its costs, reasonable attorneys' fees, expenses, and interest;

4. An award to Plaintiff of enhanced damages, up to and including trebling of Plaintiff's damages pursuant to 35 U.S.C. § 284 for Defendant's willful infringement of the Patents-in-Suit;

5. Granting a permanent injunction pursuant to 35 U.S.C. § 283, enjoining Defendant from further acts of infringement with respect to the Patents-in-Suit;

6. Awarding Plaintiff ongoing post-trial royalties for infringement of the non-expired Patents-in-Suit; and

7. Granting Plaintiff such further relief as the Court finds appropriate.

## **JURY DEMAND**

Plaintiff demands trial by jury, under Fed. R. Civ. P. 38.

Dated: May 23, 2025               Respectfully Submitted

/s/ *Christopher A. Honea*
M. Scott Fuller
  Texas Bar No. 24036607
  sfuller@ghiplaw.com
Randall Garteiser
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420

**ATTORNEYS FOR PLAINTIFF**


**ELECTRALED, INC.**